IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Maritza Dominguez Braswell**

Civil Action No. 25–cv–00812–NYW–MDB

J.G., a minor, by and through his parent Christina Giron,

    Plaintiff,

v.

School District 49,

    Defendant.

## ORDER

This matter is before the Court on Plaintiff's Motion to Submit Additional Evidence. (["Motion"], Doc. No. 16.) Defendant filed a response, to which Plaintiff replied. (["Response"], Doc. No. 25; ["Reply"], Doc. No. 28.) After careful consideration, the Court **GRANTS** the Motion.

### BACKGROUND

This is an appeal of an administrative due process hearing, brought under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(i)(2). (*See generally* Doc. No. 1.)

*Factual Background*

Plaintiff J.G. is a 10-year-old student who has been enrolled in the Defendant District since August 2020. (*Id*. at ¶ 7.) He attended Inspiration View Elementary School ("IVES") from

kindergarten to second grade. (*Id*. at ¶¶ 9-10.) Plaintiff was diagnosed with dyslexia and ADHD in October 2022, (*id*. at ¶¶ 1; 55; 61), but he alleges that manifestations of his disability— including trouble with reading, math, and paying attention—were known to Defendant as early as August 2021, (*see generally id*. at ¶¶ 15-43). Plaintiff also alleges that despite multiple requests from Plaintiff's mother, Ms. Giron—Defendant did not conduct a special education evaluation until March 2023. (*Id*. at ¶¶ 27; 46-48; 57-59; 69.)

According to Plaintiff, Defendant only evaluated him after Ms. Giron filed a complaint with the Office of Civil Rights. (*Id*. at ¶ 70.) Moreover, Plaintiff claims Defendant limited Ms. Giron's ability to communicate with Plaintiff's teachers, and restricted access to Plaintiff's records in retaliation for filing a civil rights complaint. (*Id*. at ¶¶ 169; 177.) And though Defendant put an Individualized Education Program ("IEP")[1] in place in April 2023, Plaintiff alleges it only addressed Plaintiff's dyslexia and not his ADHD-related needs. (*Id*. at ¶ 73.)

Plaintiff began attending the Academy for Literacy, Learning, & Innovation Excellence ("ALLIES")—a District school focused on helping dyslexic students—as a third grader in August 2023. (*Id*. at ¶ 78; Doc. No. 25 at 2.) Plaintiff alleges his literacy improved because he was on an IEP, but he continued to struggle with attention issues. (*Id*. at ¶ 79.) It appears Plaintiff was placed on two other IEPs—one in November 2023, and another in November 2024. (Doc. No. 25 at 2-3.)

***Procedural History***

---

[1] An IEP is a written statement of the child's present levels of educational performance, including how the child's disability affects his involvement and progress in the general curriculum, a statement of measurable annual goals and short-term objectives, a statement of special education services that are to be provided to the child, and an explanation of the extent to which the child will not participate with non-disabled students. 20 U.S.C. §§1401(14); 1414(d)(1)(A).

Ms. Giron filed a due process complaint on behalf of Plaintiff on December 21, 2023, alleging the District violated the IDEA and Colorado's Exceptional Children's Educational Act ("CECEA") by failing to provide Plaintiff with a free and appropriate public education ("FAPE")[2] and engaging in procedural violations. (*Id*. at ¶ 80.)

Administrative Law Judge Tanya T. Light ("ALJ") conducted a hearing on the matter between October 8-11, 2024, and then issued an Order on December 20, 2024, dismissing all claims and denying all requested relief. (*Id*. at ¶¶ 81-85.) The ALJ found the District did not fail in its child find[3] obligations nor did it fail to provide Plaintiff FAPE. (*Id*. at ¶ 86; ["Administrative Record" or "AR"], Doc. No. 14 at 241.) The due process hearing and the ALJ's determination concerned both the April 2023 and the November 2023 IEPs, but not the November 2024 IEP (which post-dated the ALJ's hearing).

Plaintiff initiated this action on March 12, 2025, bringing eleven claims for relief[4] under the IDEA and Colorado state law. (*See id*. at ¶¶ 132-184.) Plaintiff argues the ALJ's decision should be reversed because her findings are contradicted by the record, (*id*. at ¶¶ 111-118), and because the decision is based on misunderstandings of the IDEA statute of limitations and hearsay rules. (*See id*. at ¶¶ 92-98; 104-106.)

---

[2] Under the IDEA, the District is required to provide all disabled children within its boundaries a free and appropriate public education ("FAPE"). 20 U.S.C. §1412(a)(1)(A). A FAPE consists of special education and related services that meet the standards of the State educational agency and are provided in conformance with an IEP. 20 U.S.C. §1401(9).

[3] Child find is the affirmative, ongoing obligation of states and local districts to identify, locate, and evaluate all children with disabilities residing within the jurisdiction who are in need of special education and related services. 34 C.F.R. 300.111(a)(1)(i).

[4] Plaintiff brings claims for denial of FAPE based on predetermination (i.e., making decisions without parent input); failing to evaluate and create an IEP; denying Ms. Giron access to J.G.'s records; and failing to provide Ms. Giron with required written notices. Plaintiff also alleges retaliation for filing a complaint with the Office of Civil Rights. (*See generally* Doc. No. 1.)

Plaintiff filed the instant Motion on June 26, 2025, seeking leave to submit additional evidence of Plaintiff's academic progress. This subsequent academic progress occurred under the November 2024 IEP, not the April and November 2023 IEPs at issue during the ALJ's hearing.

## LEGAL STANDARD

The IDEA allows a party aggrieved by an administrative decision to "bring a civil action . . . in a district court of the United States." 20 U.S.C. § 1415(i)(2)(A). Pursuant to the IDEA, district courts "shall receive the records of the administrative proceedings . . . [and] shall hear additional evidence at the request of a party." 20 U.S.C. § 1415 (i)(2)(C)(i)-(ii). The court's review of an ALJ's decision is a modified *de novo* review, meaning the court must "independently review the evidence contained in the administrative record, accept and review additional evidence, if necessary, and make a decision based on the preponderance of the evidence, while giving 'due weight' to the administrative proceedings below." *Murray v. Montrose Cnty. Sch. Dist. RE-1J*, 51 F.3d 921, 927 (10th Cir. 1995).

In *Murray*, the Tenth Circuit recognized a circuit split in interpreting the IDEA's requirement that a district court "shall hear additional evidence." *See id*. at 931 n.15. Some courts, including the First and Ninth Circuit, apply a restrictive approach—known as the *Burlington* standard—and only permit evidence that is "supplemental" in nature. *Id*.; *see also Town of Burlington v. Dep't of Educ.*, 736 F.2d 773 (1st Cir. 1984); *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467 (9th Cir. 1993). By contrast, the Sixth Circuit has adopted a broader view. *See Metro. Gov't of Nashville & Davidson Cnty., Tenn. v. Cook*, 915 F.2d 232, 234 (6th Cir. 1990).

Although the *Murray* court did not resolve the circuit split, courts in this District apply the *Burlington* standard. *See, e.g.*, *L.S. v. Calhan Sch. Dist. RJ-1*, 2016 WL 541005, at *2 (D. Colo. Feb. 11, 2016); *see also L.B. ex rel. K.B. v. Nebo Sch. Dist.*, 379 F.3d 966, 974 (10th Cir. 2004) ("Although the district court may accept additional evidence, such evidence is merely supplemental to the administrative record.") (citing *Ojai*, 4 F.3d at 1472-73).[5]

Under the *Burlington* standard, "additional evidence" means evidence that is "supplemental to the administrative record." *L.B.*, 379 F.3d at 974; *Burlington*, 736 F.2d at 790 ("[T]he source of the evidence generally will be the administrative hearing record, with some supplementation at trial."). Though "[t]he reasons for supplementation will vary," they may include "gaps in the administrative transcript owing to mechanical failure, unavailability of a witness, an improper exclusion of evidence by the administrative agency, and evidence concerning relevant events occurring subsequent to the administrative hearing." *Burlington*, 736 F.2d at 790.

Ultimately, "the district court has discretion to determine if such additional evidence is necessary." *O'Toole v. Olathe Dist. Sch. Unified Sch. Dist. No. 233*, 144 F.3d 692, 708 (10th Cir. 1998). However, the "court's proceedings must maintain the character of review and not rise to the level of a *de novo* trial." *L.B.*, 379 F.3d at 974.

## ANALYSIS

Plaintiff seeks to admit evidence of his academic progress during his *second* year at ALLIES (2024-2025). (Doc. No. 16 at 4-5.) When the ALJ determined that Defendant promptly

---

[5] Plaintiff appears to concede that this more restrictive approach is the applicable standard here. (*See* Doc. No. 28 at 2.)

placed Plaintiff on an IEP in April 2023—and that the IEP was reasonably calculated to allow Plaintiff to make appropriate progress—she relied, in part, on records from Plaintiff's *first* year at ALLIES. (AR at 242 ("[Plaintiff] began ALLIES at the start of the 2023-2024 school year, and by all accounts, including Complainant's, he is flourishing there.").) Now, Plaintiff says evidence from his *second* year at ALLIES is relevant because it paints a more robust picture of his progress and demonstrates that prior to this, Defendant failed to fulfill FAPE requirements. (*See generally* Doc. No. 16 at 5-6; Doc. No. 28 at 3-5.)

Defendant argues the evidence is irrelevant because the academic performance that occurred post-hearing, under a new IEP (November 2024 IEP), is necessarily measured by different educational standards than academic performance that occurred under the relevant IEPs (April and November 2023) and at a different school, under different circumstances. (*See* Doc. No. 25 at 9-11.) In other words, Plaintiff's academic performance *after* the due process hearing, and *after* the latest IEP was issued, has no bearing on whether Defendant fulfilled its FAPE obligations long before that. Defendant also notes that courts often reject post-hearing evidence. *See, e.g., A.S. v. Trumbull Bd. of Educ.*, 414 F. Supp. 2d 152, 171 (D. Conn. 2006); *Stanley C. v. M.S.D. of Sw. Allen Cnty. Sch.*, 2008 WL 11504542, at *5 (N.D. Ind. Apr. 21, 2008); *J.R. v. Bd. of Educ. of City of Rye Sch. Dist.*, 345 F. Supp. 2d 386, 395 (S.D.N.Y. 2004). Defendant also argues that accepting this evidence would require foundational testimony and expert opinions, and impermissibly convert the proceeding from a modified *de novo* review of an administrative hearing, into a full trial *de novo*. (Doc. No. 25 at 15.)

Defendant's arguments are well taken, but ultimately not persuasive. *Burlington* expressly contemplates that in some instances post-hearing evidence may inform a court's

6

limited review of an ALJ's decision. *See Burlington*, 736 F.2d at 790 (stating that while "[t]he reasons for supplementation will vary ... they may include … evidence concerning relevant events occurring subsequent to the administrative hearing"). Here, evidence of high academic performance during Plaintiff's second year at ALLIES, is relevant to show that prior low performance may have been due to the deprivation of FAPE. A similar argument was persuasive to the Honorable Susan B. Prose. *See K.C. by & through Clements v. Denver Pub. Sch.*, 2025 WL 1918116, at *3 (D. Colo. July 10, 2025) (finding that "subsequent academic performance while receiving special education services is relevant to [the] argument that the District failed to provide him with FAPE.") And while the Court is not bound by the *K.C.* decision, Judge Prose's reasoning was legally sound, well-reasoned, and persuasive.

Moreover, Plaintiff's arguments in this case are more compelling than in *K.C.*, because here, the ALJ already considered evidence of academic progress. (*See* Doc. No. 25 at 3 (citing the record to demonstrate that "[d]uring the DP Hearing, IEP progress reports from May 2023, October 2023, December 2023, March 2024, and May 2024 were admitted into evidence and explained by service providers in detail.")). *Cf. K.C. by & through Clements*, 2025 WL 1918116, at *3 ("While the District argues that the proffered evidence would not be probative because there is already evidence of K.C.'s progress at his new school ... the District does not identify this preexisting evidence."). If evidence of academic progress is already part of the record, then additional evidence of academic progress is truly "supplemental" and does not convert this into a full *de novo* review. And although the supplemental evidence is somewhat cumulative, supplemental evidence is—by definition—always cumulative to some extent. Moreover, this

particular evidence is not *needlessly* cumulative, and it is not so cumulative that it outweighs the probative value.[6]

As to Defendant's concern that expert testimony will be necessary and expand the scope of the hearing—its arguments are overstated and unsupported. The evidence of Plaintiff's academic progress does not appear to require expert analysis or interpretation. Nor does Defendant explain how an expert would add value, or why a layperson is incapable of interpreting the information. (*See* Doc. 25 at 10, 15.) Indeed, academic records are regularly interpreted by laypeople (e.g., students and parents), and Plaintiff has committed himself to the position that expert witnesses are not necessary. He states, the exhibits and results "are easily interpretable," "produced for lay persons," and "not so complicated that only an expert can interpret them." (Doc. No. 28 at 8-10.) Because the evidence does not require expert testimony, and because Plaintiff will not seek it here, Defendant's arguments concerning expert work are unpersuasive.

In sum, the additional evidence is relevant, supplemental, and its inclusion will not change the character of review. This conclusion rests, in part, on Plaintiff's proffer that he will not use the evidence "to show that Defendant violated its child-find duty, but to show that Defendant denied J.G. FAPE." (Doc. No. 28 at 4). This is an important limitation. Using the evidence to argue what Defendant should have known prior to the November 2024 IEP, or to

---

[6] Also, the Court sees no prejudice to Defendant, who admits the evidence would be *helpful* to it. (Doc. No. 25 at 10 ("Although helpful to Defendant, the proposed exhibits purportedly showing 'substantial' progress on his revised IEP goals and objectives of the November 15, 2024 IEP are not relevant to the Respondent's child find obligation and of little to no probative value regarding the already demonstrated and stipulated to adequacy of the April 7, 2023 or November 28, 2023, IEP's.")

make the November 2024 IEP the gold standard, runs the risk of "Monday-morning quarterbacking" that Defendant rightfully warns against. (*See* Doc. No. 25 at 9.)[7]

## CONCLUSION

For the foregoing reasons, the Court **ORDERS** that Plaintiff's Motion to Submit Additional Evidence (Doc. No. 16) is **GRANTED**.

Dated this 10th day of November, 2025.

**BY THE COURT:**

_____
Maritza Dominguez Braswell
United States Magistrate Judge

---

[7] Because Plaintiff's reliance on the supplemental evidence is limited, there is no need to admit the November 2024 IEP, as Defendant contends. (*See* Doc. No. 25 at 10.) Plaintiff can argue that his progress in 2024-2025—as compared with the lack of progress in prior years—is evidence that Plaintiff was previously deprived of FAPE. But that argument can be made without reference to the November 2024 IEP, and without impermissibly expanding the scope of the court's review.

9